UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TASHARA D. GORDON,

                      Plaintiff,

              v.

ANDREW M. SAUL,[1] Commissioner of
  Social Security,

                      Defendant.
_____

**DECISION
and
ORDER**

**18-CV-6381F**
(**consent**)

APPEARANCES:          LAW OFFICES OF KENNETH R. HILLER, PLLC
                            Attorneys for Plaintiff
                            KENNETH R. HILLER, and
                            JUSTIN M. GOLDSTEIN, of Counsel
                            6000 North Bailey Avenue, Suite 1A
                            Amherst, New York 14226

                            JAMES P. KENNEDY, JR.
                            UNITED STATES ATTORNEY
                            Attorney for Defendant
                            Federal Centre
                            138 Delaware Avenue
                            Buffalo, New York 14202
                                   and
                            KATHRYN L. SMITH
                            Assistant United States Attorney
                            United States Attorney's Office
                            100 State Street
                            Rochester, New York 14614
                                   and
                            REBECCA HOPE ESTELLE
                            Special Assistant United States Attorney, of Counsel
                            Social Security Administration
                            Office of General Counsel
                            26 Federal Plaza – Room 3904
                            New York, New York 10278
                                   and

---

[1] Andrew M. Saul became the Commissioner of the Social Security Administration on June 17, 2019, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case. No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

FRANCIS D. TANKARD, and
JOHN P. FOX
Special Assistant United States Attorneys, of Counsel
Social Security Administration
Office of General Counsel
601 E. 12th Street, Room 965
Kansas City, Missouri 64106

## JURISDICTION

On July 9, 2019, this matter was reassigned to the undersigned before whom the parties to this action consented pursuant to 28 U.S.C. § 636(c) to proceed in accordance with this court's June 29, 2018 Standing Order (Dkt. 17). The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on February 19, 2019 (Dkt. 12), and by Defendant on April 22, 2019 (Dkt. 15).

## BACKGROUND

Plaintiff Tashara D. Gordon ("Plaintiff"), brings this action under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's applications filed with the Social Security Administration ("SSA"), on September 29, 2014, for Social Security Disability Insurance ("SSDI") under Title II of the Act, and for Social Security Supplemental Income ("SSI") under Title XVI of the Act (together, "disability benefits"). Plaintiff alleges she became disabled on July 18, 2014, based on a learning disability, bipolar disorder, anxiety/depression, migraines, post concussion syndrome, insomnia, dizziness, mood instability, and short term memory problems. AR[2]

---

[2] References to "AR" are to the page of the Administrative Record electronically filed by Defendant on October 19, 2018 (Dkt. 9).

at 235, 241, 260, 266.  Plaintiff's applications initially were denied on January 21, 2015, AR at 140-45, and at Plaintiff's timely request, AR at 149-50, on April 12, 2017, a hearing was held in Rochester, New York, before administrative law judge Gretchen Mary Greisler ("the ALJ).  AR at 60-96.  Appearing and testifying at the hearing were Plaintiff, represented by non-attorney Gregg Redmond ("Redmond"), and vocational expert ("VE") Joseph M. Atkinson.

On June 20, 2017, the ALJ issued a decision denying Plaintiff's claim, AR at 9-31 ("the ALJ's decision"), which Plaintiff timely appealed to the Appeals Council.  AR at 233-34.  On March 28, 2018, the Appeals Council issued a decision denying Plaintiff's request for review, rendering the ALJ's decision the Commissioner's final decision.  AR at 1-4.  On May 23, 2018, Plaintiff commenced the instant action seeking judicial review of the ALJ's decision.

On February 19, 2019, Plaintiff moved for judgment on the pleadings (Dkt. 12) ("Plaintiffs' Motion"), attaching Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Administrative Record (Dkt. 12-1) ("Plaintiff's Memorandum").  On April 22, 2019, Defendant moved for judgment on the pleadings (Dkt. 18) ("Defendant's Motion"), attaching the Commissioner's Brief in Response Pursuant to Local Standing Order on Social Security Cases (Dkt. 15-1) ("Defendant's Memorandum").  Filed on May 12, 2019, was Plaintiff's Memorandum of Law in Reply to Commissioner's Judgment on the Pleadings and in Further Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 16) ("Plaintiff's Reply").  Oral argument was deemed unnecessary.

Based on the foregoing, Plaintiff's Motion is GRANTED; Defendant's Motion is DENIED; the matter is remanded for calculation of benefits.

## **FACTS**[3]

Plaintiff Tashara D. Gordon ("Plaintiff" or "Gordon"), born April 26, 1986, was 28 years old as of July 18, 2014, her alleged disability onset date ("DOD"), and 31 years old as of June 23, 2017, the date of the ALJ's decision. AR at 235, 241, 260. At age 21, Plaintiff graduated from high school where she attended special education classes, repeated first and sixth grades, and has not since completed any specialized job training or technical school. AR at 70, 73, 76, 267. Plaintiff never married, has no children, and when she applied for disability benefits, lived with her mother and brother, AR at 235, 242, 274, but had moved in with her grandmother as of the date of the administrative hearing. AR at 68-69.

Plaintiff has past work experience as a personal care aide with a home health agency, and a teacher assistant/floater, AR at 267, but stopped working after a motor vehicle accident left her too injured to work. AR at 75, 266. Plaintiff has a driver's license, but does not own a vehicle so she depends on others for rides or uses public transportation. AR at 70, 277-78. Plaintiff's difficulties understanding directions, depression, and limited range of motion of her neck also interfere with driving. AR at 76. Plaintiff likes to read, especially picture books because she has a hard time understanding what she reads, AR at 71, 76, cannot do math or count change, AR at

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

4

73, and depends on her mother for meals because she is unable to prepare her own. AR at 72. Plaintiff's grandmother did the grocery shopping and laundry. AR at 84-85.

## DISCUSSION

**1.      Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A). A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error. 42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id.* "Congress has

instructed . . . that the factual findings of the Secretary,[4] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d60, 62 (2d Cir. 1982).

**2.    Disability Determination**

The definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits. *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a). The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). If the claimant meets the criteria at any of the five steps, the inquiry ceases and the claimant is not eligible for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months, there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience. 42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d). As a fourth

---

[4] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

6

step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" or "RFC" which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW"). 20 C.F.R. §§ 404.1520(e) and 416.920(e). If the applicant remains capable of performing PRW, disability benefits will be denied, *id.*, but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c). The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).

In the instant case, the ALJ found Plaintiff met the insured status requirement for SSDI through December 31, 2019, AR at 14, has not engaged in substantial gainful activity since July 18, 2014, her alleged disability onset date, AR at 14, and suffers from the severe impairments of degenerative disc disease in the cervical spine and lumbar spine, fibromyalgia, asthma, learning disorder, depression, bipolar disorder, and impulse control disorder, AR at 14-15, but that Plaintiff's alleged impairments of deficient cognitive functioning and post-concussion syndrome are not supported by the record, AR at 15-16, and that Plaintiff does not have an impairment or combination of

7

impairments meeting or medically equal to the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.* at 16-18.  Despite her impairments, the ALJ found Plaintiff retains the RFC to perform a light work except for only occasionally stooping, crouching, kneeling, crawling, and climbing stairs and ramps, never climbing ladders, ropes or scaffolds, frequently rotating her head at the neck, that Plaintiff's ability to read, write and perform math is limited to the General Educational Development ("GED")[5] level 2, permitting Plaintiff to perform simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements, involving only simple, work-related decisions and few, if any, workplace changes.  *Id.* at 18-23.  Plaintiff also remains able to tolerate significant independent judgment, sharing of job tasks, and contact with the public, and needs to work in an environment where the supervisor delivers work instructions verbally or by demonstration.  *Id.*  Further, Plaintiff cannot tolerate concentrated exposure to extreme heat or cold, or respiratory irritants.  *Id.*  Plaintiff's RFC does not permit Plaintiff to perform her PRW as a personal care aide for a home health care agency and teacher assistant/floater in a daycare setting, *id.* at 23, yet given Plaintiff's RFC, her age, and education including that Plaintiff completed 12th grade, is able to communicate in English, and despite having no skills transferrable from her previous employment, Plaintiff can perform jobs that exist in significant numbers in the national economy including office helper, mail clerk, and

---

[5] As defined in the Dictionary of Occupational Titles ("DOT"),
> General Education Development embraces those aspects of education (formal and informal), which are required of the worker for satisfactory job performance.  This is education of a general nature which does not have a recognized, fairly specific occupational objective.  Ordinarily, such education is obtained in elementary school, high school, or college.  However, it may be obtained from experience and self-study.

Dictionary of Occupational titles, Appx. C: Components of the Definition Trailer, § III.

marker II.  *Id.* at 24-45.  Based on these findings, the ALJ determined Plaintiff is not disabled as defined under the Act.  *Id.* at 25.

Plaintiff does not contest the ALJ's findings with regard to the first two steps of the five-step analysis, but argues that at the third step, the ALJ failed to consider substantial evidence establishing Plaintiff meets the requirements for disability based on Listing Impairment 12.05B ("§ 12.05B"), Plaintiff's Memorandum at 17-22, and at the fourth step, the record is devoid of any function-by-function analysis of Plaintiff's physical abilities and limitations such that the ALJ's assessment of Plaintiff's physical RFC is based on the ALJ's lay opinion, *id.* at 22-24, and the ALJ's mental RFC finding is unsupported given every opinion of an examining or treating source is more restrictive than the ALJ's finding.  *Id.* at 24-30.  Defendant argues substantial evidence supports the ALJ's determination that Plaintiff does not meet the criteria for disability under § 12.05B, Defendant's Memorandum at 14-16, and the ALJ properly evaluated both Plaintiff's physical RFC, *id.* at 16-19, and mental RFC.  *Id.* at 19-23.  In reply, Plaintiff argues the ALJ failed to acknowledge or to evaluate test scores establishing Plaintiff meets the criteria under § 12.05B, Plaintiff's Reply at 1-5, and reiterates her earlier arguments that the ALJ's assessments of both Plaintiff's physical and mental RFC are not supported by substantial evidence in the record.  *Id.* at 5-7 (physical RFC), and 7-9 (mental RFC).  A fair reading of the record establishes substantial evidence supports Plaintiff meets the criteria for disability under the relevant Listing of Impairments.

Specifically, Listing Impairment 12.05B sets forth the criteria for disability based on intellectual disorder, including, as relevant,

    1.  Significantly subaverage general intellectual functioning evidenced by a or b:

9

> a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
> b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) or 70 or below on an individually administered standardized test of general intelligence; and
>
> 2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
> > a. Understand, remember, or apply information (see 12.00E1); or
> > b. Interact with others (see 12.00E2); or
> > c. Concentrate, persist, or maintain pace (see 12.00E3); or
> > d. Adapt or manage oneself (see 12.00E4); and
>
> 3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

20 C.F.R. Part 404, Subpt. P, App. 1, § 12.05B.

The parties do not dispute that Plaintiff meets the criteria under 12.05B.3, but disagree as to whether the 12.05B.1 and 2 criteria pertaining to IQ score and adaptive functioning. The record, however, does not support the ALJ's determination on this issue.

The only IQ scores in the record for Plaintiff are from March 1993, and show Plaintiff's full-scale IQ was 71, verbal IQ was 65, and performance IQ was 81. AR at 329, 1049, 1076. Plaintiff also achieved a verbal score of 69 on the Differential Abilities Scales in January 1994. AR at 1049, 1050, 1060. These scores meet the requirement of § 12.05B.1.b. Insofar as Defendant maintains these scores are stale, Defendant relies on SSA Program Operations Manual System ("POMS") Disability 24515.055.D.1, which provides, as relevant here, that an IQ score between 40 and 70 for a child under age 16 is current for only two years. SSA POMS DI 24515.055.D.1. Under the Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed.Reg. 66,137 (Sept. 26, 2016),

however, which apply to claims pending on or after the effective date of January 17, 2017, IQ tests are "generally presumed" to be

> an accurate reflection of your generally intellectual functioning, unless other evidence in the record suggests otherwise. Examples of this evidence include: a statement from the test administrator indicating that your obtained score is not an accurate reflection of your general intellectual functioning, prior or internally inconsistent IQ scores, or information about your daily functioning. Only qualified specialists, Federal and State agency medical and psychological consultants, and other contracted medical and psychological experts may conclude that your obtained IQ score is not an accurate reflection of your general intellectual functioning. This conclusion must be well supported by appropriate clinical and laboratory diagnostic techniques and must be based on relevant evidence in the case record. . . .

20 C.F.R. Part 404, Subpt. P § 12.00H.2.d.

Further, a more recent POMS provides that IQ scores that are not current "may still provide useful information about whether a person's intellectual disorder began during the developmental period." SSA POMS DI 24583.055.I.7. Accordingly, absent some evidence in the record indicating Plaintiff's IQ scores, obtained in 1993, are not consistent with Plaintiff's current intellectual functioning, the scores remain indicative of Plaintiff's current IQ. Tellingly, the ALJ points to none. In contrast, Plaintiff's academic records indicate that the Rochester City School District continued to rely on the 1993 IQ scores throughout Plaintiff's years of education. *See* December 4, 1998 Academic Evaluation prepared by the Rochester City School District, relying on Plaintiff's 1993 IQ scores. AR at 329, 1049, 1076. Further, on psychological evaluation testing administered by Rochester City School District on January 12, 14, and 21, 1994, when Plaintiff was almost eight years old, Plaintiff's scores placed her in the mentally retarded range for verbal cluster, low average for non-verbal reasoning cluster, and borderline for spatial cluster and general conceptual ability. AR at 1055-56. In adaptive behavior,

Plaintiff functioned in the mentally retarded to borderline range with communication skills especially weak. AR at 1057. Plaintiff's IQ scores thus establish she meets the criteria under 20 C.F.R. Part 404, Subpt. P. App. 1, § 12.05B.1.b.

With regard to adaptive functioning, evidence in the record establishes Plaintiff has marked deficits with regard to understanding, remembering, or applying information, 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.05B.2.a, as well as concentration, persistence or maintaining pace. 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.05B.2.c. In particular regard to the domain of understanding, remembering, or applying information, § 12.05B.2.a, the relevant regulations provide

> this area of mental functioning refers to the abilities to learn, recall, and use information to perform work activities. Examples include: Understanding and learning terms, instructions, procedures; following one- or two-step oral instructions to carry out a task; describing work activity to someone else; asking and answering questions and providing explanations; recognizing a mistake and correcting it; identifying and solving problems; sequencing multi-step activities; and using reason and judgment to make work-related decisions.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00E.1.

That Plaintiff has significant deficits in understanding, remembering and applying information is well-established in the record. In particular, throughout her school years, Plaintiff repeatedly was reported as needing to have questions read to her. AR at 332.

According to a December 4, 1998 Academic Evaluation prepared by the Rochester City School District, Plaintiff was reported as displaying significant short-term memory deficit and auditory processing deficit, with short-term memory for information presented both in sentence form and word fragments between the pre-kindergarten and kindergarten grade level, and auditory processing abilities measured at the first grade level. AR at 1050. On May 10, 2003, Plaintiff was referred by her teacher for academic evaluation and Plaintiff showed low reading and writing skills, and poor comprehension

12

skills. AR at 1075. Plaintiff's teacher, who worked with Plaintiff one on one, reported Plaintiff was unable to comprehend what was read, and could not write sentences or paragraphs that made sense. AR at 1075. On December 12, 2003, when Plaintiff was 17 years and 8 months old, Plaintiff underwent a Psychological Evaluation by the Rochester City School District. AR at 1073-1085. Plaintiff was noted to be a "hard worker" but with "very low skills," and despite "never being a behavior problem," "willing to work after school and during lunch to get additional help," Plaintiff "has difficulty remembering what she is taught," and "shows a long response time." AR at 1075-76. As an example, Plaintiff "may understand math facts one day and forget them the next." AR at 1076.

Nor is there any evidence in the record supporting the ALJ's hypothetical posed to the VE that the claimant can read, write, and perform math at GED level 2. AR at 89; *see* AR at 18 (assessing Plaintiff's RFC as including the ability "to read, write, and perform math at a GED level 2"). Specifically, for Mathematical Development, GED level 2 requires the ability to add, subtract, multiply, and divide all units of measure, perform the same four operations with like common and decimal fractions, compute ratios, rate and percent, draw and interpret bar graphs, perform arithmetic operations involving all American monetary units. On a December 4, 1998 math sub-test, however, Plaintiff correctly completed simple addition and subtraction, single digit multiplication and addition of double digit numbers requiring carrying and decimal placement, but made errors when subtracting double digit numbers requiring regrouping, and Plaintiff had problems with multiplying double digit numbers by a single digit, could calculate division of single digit numbers, but not multi-digit numbers or long division, and could

not answer questions with fractions.  AR at 330.  Plaintiff also testified that she is unable to count change.  AR at 72-73.  The evidence in the record thus does not support the ALJ's determination that Plaintiff can function at a GED level 2 with regard to math.

With regard to Language Development, GED level 2 requires a passive vocabulary of 5,000-6,000 words, reading rate of 190-215 words per minute, reading adventure stories and comic books, looking up unfamiliar words in the dictionary for meaning, spelling, and pronunciation, reading instructions for assembling model cars and airplanes, writing compound and complex sentences, proper end punctuation, and employing adjectives and adverbs.  On the December 4, 1998 reading sub-test, Plaintiff vocalized while reading, plugged in two or three answers to questions before settling on one, and worked slowly.  AR at 330.  Plaintiff had the most questions on the writing sub-test, often erased words and added phrases, and requested clarification, with sentences "simple and to the point," errors "most often in verb agreement and proper verb tense," and "[s]ome responses were good sentences, however, the response did not answer the question that was asked."  AR at 330.  Further, Plaintiff testified at the administrative hearing that she cannot write a list for the grocery store, AR at 72, enjoys mostly picture books, AR at 76, and when she applied for her driver's license, had to have the questions read to her.  AR at 76.  The evidence in the record thus also fails to establish that Plaintiff can function at a GED level of 2 with regard to language development.

Moreover, when the hypothetical was amended to provide for reading, writing, and math at GED level 1, the VE responded there would be no jobs that could be performed.  AR at 92.  In short, nothing in the record supports the ALJ's determination

14

that Plaintiff has only a mild limitation as to understanding, remembering, and applying information as provided under 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05B.2.a.

With regard to the domain of concentration, persistence, and maintaining pace, § 12.05B.2.c, the relevant regulation provides

> this area of mental functioning refers to the abilities to focus attention on work activities and stay on task at a sustained rate. Examples include: Initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00E.3.

An April 10, 2006 review of Plaintiff's IEP reports Plaintiff in special education classes, receiving direct support in math, English, science, and social studies, requiring 1 ½ time for tests, and teachers reading questions to Plaintiff, allowing for rephrasing. AR at 332. Although 20 years old, Plaintiff was not expected to graduate high school that year. AR at 333. Plaintiff had perceptual and memory deficits that impact visual-auditory long-term memory, and these deficits were evidence in Plaintiff's low reading and writing skills. AR at 334. Further, as discussed in connection with the domain of understanding, remembering, and applying information, Discussion, *supra*, at 14-16, the record is replete with evidence that Plaintiff is markedly limited insofar as Plaintiff remained in high school for several years beyond what generally is required to graduate, repeating grades one and six, attended special education classes, and obtained only a general, as opposed to Regent's, diploma. Significantly, when asked at the administrative hearing, the VE testified that if Plaintiff required the ability to regularly

reference a list or chart to maintain a desired productivity rate, the VE responded such a requirement would preclude any competitive employment. AR at 90-91.

Accordingly, substantial evidence in the record establishes Plaintiff is markedly limited in the domain of concentrating, persisting or maintaining pace, as defined under 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05B.2.c. The determination that Plaintiff is markedly limited in the domains of understanding, remembering, or applying information, as well as in concentrating, persisting or maintaining pace establishes Plaintiff meets the requirements for disability under Listing Impairment § 12.05B. Moreover, having found Plaintiff meets the criteria for disability based on a Listing Impairment, the inquiry ceases. 20 C.F.R. § 416.920(d) (providing claimant who meets or equals criteria of a Listing Impairment is considered disabled without regard to age, education, and work experience). Accordingly, the matter is REMANDED for calculation of benefits.

Mindful of the often painfully slow process by which disability determinations are made, the Second Circuit instructs that some evaluation of relative hardship to a claimant of further delay should be considered, *Butts v. Barnhart*, 388 F.3d 377, 387 (2d Cir. 2004), district courts may therefore "when appropriate set a time limit for action by the administrative tribunal, and this is often done." *Zambrana v. Califano,* 651 F.2d 842, 844 (2d Cir. 1981) (citing cases). *See also Michaels v. Colvin*, 621 Fed.App'x. 35, 41 (2d Cir. 2015) (directing upon remand for further fact-finding at step five that given eight years had elapsed since the plaintiff filed for disability benefits, the further administrative proceedings were to be completed within 120 days, with the Commissioner's final decision to be rendered within 60 days of any appeal by the plaintiff from the ALJ's

decision, and citing *Butts v. Barnhart*, 388 F.3d 377, 387 (2d Cir. 2004) (imposing time limit on remand where "the past delay is of such magnitude – years – that a time limit is imperative") *as amended on reh'g in part*, 416 F.3d 101, 106 (2d Cir. 2005) (providing that if deadlines for further administrative proceedings at the fifth step, on which the Commissioner bears the burden of proof, are not met, "a calculation of benefits owed [plaintiff] must be made immediately)).

Here, Plaintiff filed her application for disability on September 29, 2014, testified at an administrative hearing on April 12, 2017, received the ALJ's Decision finding Plaintiff not disabled on June 23, 2017, and the Appeals Council's denial on March 26, 2018. As it has been five years since Plaintiff first filed her application for disability, further delay for remand is a hardship this Plaintiff should not bear. The Commissioner's calculation of benefits should therefore be completed within 120 days of this Decision and Order. *See Dambrowski v. Astrue,* 590 F.Supp.2d 579, 588 (S.D.N.Y. 2008) (imposing a time limit of 120 days for subsequent proceedings when five years had passed since Plaintiff filed his application).

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. 12) is GRANTED; Defendant's Motion (Dkt. 15) is DENIED; the matter is remanded to the Commissioner for calculation of benefits. The Clerk of Court is directed to close the file.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED: September 30th, 2019
Buffalo, New York